[Civ. No. 19023.   First Dist., Div. Two.   July 26, 1960.]

CLARENCE R. ARMAS et al., Appellants, v. CITY OF OAKLAND et al., Defendants and Respondents; THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Intervener and Respondent.

Harry D. Miller for Appellants.

John W. Collier, City Attorney, and Mark B. Shragge, Deputy City Attorney, for Defendants and Respondents.

Holloway Jones, Jack M. Howard, John D. Rogers, Norval Fairman, Charles W. Thissell and Robert E. Reed for Intervener and Respondent.

DRAPER, J.—This is a taxpayer's suit to have a freeway agreement between defendant city and the State of California declared void, and to enjoin the city and its officers from performance thereof. Defendants' motion for judgment on the pleadings was granted, and plaintiffs appeal.

By the agreement in question, the city "agrees and consents to the closing of city streets" incident to the construction of a freeway. The 33 streets to be closed are shown on a map attached to the agreement, which was executed by the Department of Public Works in behalf of the state. The agreement was signed on behalf of the city pursuant to a resolution of the city council approving the agreement and directing its execution by named officials.

Plaintiffs' argument is that the resolution and the agreement executed under it are void because of failure to comply with the requirements of notice, opportunity to protest, and hearing which are specified by the Street Opening Act of 1889 (Sts. & Hy. Code, §§ 3220-3226) or the Street Vacation Act of 1941 (Sts. & Hy. Code, §§ 8300-8374). Plaintiffs rely upon the established rule that under a statute granting a power but establishing a limited means of exercising it the mode is the measure of the power. If the only authority to close city streets bisected by a freeway were to be found in the acts cited, their argument would be sound. But we have concluded that another section establishes the power to provide by agreement for such closing as is incident to freeway construction.

The parties devote substantial portions of their arguments to the question whether the closing of streets incident to construction of a freeway is a state or a municipal function. We find it unnecessary to determine this question. Although Oakland is a charter city, plaintiffs concede that its charter and

ordinances prescribe no procedure for street closing and that thus the procedural provisions of state law must be followed, even if the function be municipal in character (see *Hyde* v. *Wilde,* 51 Cal.App. 82, 86 [196 P. 118].) The question then, is whether the procedure here followed conforms to a statutory scheme.

The Code (Sts. & Hy. Code, § 100.2) specifically provides that the Department of Public Works is authorized to ''enter into an agreement with the city council . . . and, as may be provided in such agreement, to close any city street . . . at or near the point of its interception with any freeway. . . .'' Whatever may have been its effect when first adopted (Stats. 1939, p. 2204), its 1953 amendment clearly shows that it is not in derogation of the rights of the municipality. By that amendment (Stats. 1953, p. 2719) it was provided that ''no city street . . . shall be closed, either directly or indirectly, by the construction of a freeway except pursuant to such an agreement. . . .'' This amendment has been construed to afford the city a veto of street closing for construction of a freeway by the state (27 Ops. Atty. Gen. 173).

Section 100.2 clearly, directly and specifically authorizes the precise type of agreement here in issue, and permits the State Department of Public Works to close streets pursuant to such agreement. It does not require the notice and hearing specified in the two acts relied upon by plaintiffs. It authorizes the city council to make the agreement on behalf of the city. In doing so, it specifically preserves ''home rule'' by denying the state the right to close streets for a freeway except with council consent.

But the section accomplishes this result without requiring the formalities of other acts. Concededly there is no express incorporation of the requirements of the Street Opening Act of 1889. That act was adopted long before freeways were thought of. The failure to refer to it when section 100.2 was adopted in 1939 is significant. The Street Vacation Act of 1941 specifically states that it provides only ''an alternative system of proceedings,'' and that its provisions ''shall not apply to or affect any other provisions of this code'' (Sts. & Hy. Code, § 8308).

Section 100.2 sets up an integrated and complete means of closing city streets as an incident to construction of freeways. A city council which elects to follow this method acts within authority of law in doing so. ▌ It may elect to refuse execution of an agreement with the state, and itself

proceed under the Street Opening Act of 1889. But we find nothing in the statute which compels such procedure. Rather, the election of method is left to the city council. Its members are elected by the city's voters, including those who own property at or near the proposed freeway. The decision is, by the statute, left to the council and not to individual property owners. The property rights of such owners are expressly protected (Sts. & Hy. Code, § 100.3). Other considerations are left to the council, which by its approval of the agreement has resolved them against plaintiffs.

Judgment affirmed.

Kaufman, P. J., and Stone, J. pro tem.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 20, 1960. Schauer, J., and Peters, J., were of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.